UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

ANA LOUISE CRUZ-BOSCH,

    Plaintiff,

v.

UNITED PARCEL SERVICES,

    Defendant.

Civil No. 09-1938 (JAF)

**<u>OPINION AND ORDER</u>**

Plaintiff, Ana Louise Cruz-Bosch, brings this action against Defendant, United States Parcel Services, alleging sex discrimination and retaliation in violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. §§ 2000e to e-17, and discrimination and retaliation in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634. (Docket No. 1 at 1.) Plaintiff also alleges disability discrimination in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101–12213. (<u>Id.</u>) Plaintiff brings supplemental claims under various Puerto Rico anti-discrimination statutes. (<u>Id.</u>) Defendant moves for summary judgment under Federal Rule of Civil Procedure 56(c). (Docket No. 13.) Plaintiff opposes (Docket Nos. 21; 22), and Defendant responds (Docket No. 25). Plaintiff replies. (Docket No. 46.)

Civil No. 09-1938 (JAF)                                                                                      -2-

# I.

# Factual Synopsis

We derive the following facts from the parties' motions, statements of uncontested material facts, and exhibits. (Docket Nos. 1, 6, 17, 23, 35, 46.)

Plaintiff has worked as a Package Driver ("driver") for Defendant since January 29, 1985. In addition to handling and delivering packages, drivers perform other duties, such as loading and unloading trucks before embarking to deliver packages on their routes ("loading duties"). (Docket No. 13-1 at 2.) As of December 2008, Plaintiff has not loaded trucks, and has exclusively performed the duties of driving the delivery truck and delivering packages to customers. (Id.) Neither Plaintiff's compensation nor benefits have ever been reduced, and she continues to hold the same position. (Id.) Plaintiff, however, alleges that Ismael Ortiz ("Ortiz"), who served as her supervisor from April to December 2, 2008, assigned an "excessive workload," threatened to fire her, made ageist and sexist remarks, and told her she should retire.[1] (Id. at 5.)

On December 3, 2008, Plaintiff filed an internal complaint with the confidential employee complaint telephone hotline, alleging that Ortiz had harassed, micromanaged, and threatened her. (Docket No. 13-12.) The complaint record does not indicate that Plaintiff gave a motive for the alleged harassment, nor does it contain specific anecdotes or examples of harassment. Plaintiff alleges that after she filed her internal complaint, Ortiz took retaliatory

---

[1] Specifically, Plaintiff claims that Ortiz called her old frequently, and that he told her: "Get out. For being a woman, get out." (Docket No. 22-2 at 20.)

Civil No. 09-1938 (JAF) -3-

actions against her, including assigning her extra work and continuing to verbally harass her.[2] (Docket No. 23 at 7.) Ortiz, however, was transferred and ceased to serve as Plaintiff's supervisor the day <u>before</u> she made the internal complaint. (Docket 13-1 at 2.)

Plaintiff, while unable to recall a date or month, also claims that after she orally requested reasonable accommodation for her alleged disability, Ortiz started an additional "harassment and discriminatory campaign against her," in retaliation for the alleged accommodation requests . (Docket No. 1 at 3.) After Ortiz left his position as on December 2, 2008, Carlos Santiago ("Santiago") replaced him as Plaintiff's supervisor. Plaintiff claims that Santiago also asked her on several occasions when she planned to retire (Docket 22-3 at 7–8.)

Plaintiff alleges that she was treated for carpal tunnel syndrome and that she suffers pain in her back and knees, as well as depression. (Docket Nos. 1 at 3; 13-1 at 6; 23 at 12.) Plaintiff cannot recall a date, but she also claims that she verbally requested a reasonable accommodation for her disability, asking Ortiz to be excused from loading duties. (Docket No. 1 at 3.) Plaintiff admits that she did not explain to Ortiz that she made the request because of a medical condition, nor did she present any medical documentation explaining her disability or need for accommodation at that time. (Docket No. 22-1 at 16–18.) In Plaintiff's deposition of May 17, 2010, she stated that she drove trucks and made deliveries, but had not performed loading duties

---

[2] We find no factual support for Plaintiff's allegations and testimony that Ortiz retaliated against her after she called the company complaint hotline, with respect to Plaintiff's Title VII and ADEA retaliation claims. (Docket No. 47-1 at 35.) Ortiz ceased to be her supervisor the day <u>before</u> she called the hotline. (Docket 13-1 at 2.) However, viewing the evidence in the light most favorable to Plaintiff, we will assume that Ortiz could have retaliated in response to Plaintiff's alleged verbal requests for disability accommodation.

Civil No. 09-1938 (JAF)                                                                                                           -4-

for "about a year and a half." (Docket No. 22-1 at 12.) Thus, as of December 2008, Plaintiff had ceased to perform loading duties. In May 2009, Plaintiff obtained a release at the State Insurance Fund Corporation ("SIF") stating that her hand condition constituted a disability. (Docket No. 13-1 at 5.) After Plaintiff submitted this document, Defendant gave Plaintiff a "Request for Medical Information" for her doctor to fill out about her condition. (Id.) Instead of returning this form, Plaintiff's doctor submitted a letter to Defendant on June 3, 2009, which stated that Plaintiff had carpal tunnel syndrome, but could still perform all her job duties. (Id. at 6.)

Plaintiff's Complaint alleges that following her requests for accommodation, Ortiz retaliated by increasing his scrutiny of her, threatening to fire her if she did not do her duties, and by increasing her duties "without any type of help or support." (Id. at 4; Docket No. 23-1 at 4.)

On January 19, 2009, Plaintiff made an additional internal complaint following up on her original call to the employee hotline. (Docket No. 23 at 7.) Subsequently, on April 28, 2009, Plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") and the Anti-discrimination Unit of the Department of Labor and Human Relations ("ADU"), and on September 16, 2009, brought the current suit. (Id.)

Civil No. 09-1938 (JAF) -5-

## II.

### Summary Judgment Under Rule 56

We must grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" if it could be resolved in favor of either party and "material" if it potentially affects the outcome of the case. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

The movant carries the burden of establishing that there is no genuine dispute as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The movant may satisfy this burden by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, . . . or other materials." Fed. R. Civ. P. 56(c)(1)(A). Furthermore, to establish the absence of a genuine dispute of material fact, the movant need not produce evidence, but may instead point to a lack of evidence supporting the nonmovant's case. See Fed. R. Civ. P. 56(c)(1)(B); see also Celotex, 477 U.S. at 325. "Once the moving party has made a preliminary showing that no genuine [dispute] of material fact exists, the nonmovant must produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy [dispute]." Clifford v. Barnhart, 449 F.3d 276, 280 (1st Cir. 2006) (internal quotation marks omitted); see also Fed. R. Civ. P. 56(c)(1).

Civil No. 09-1938 (JAF)                                                                                          -6-

In evaluating a motion for summary judgment, we must view the record in the light most favorable to the non-movant. See Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150–51 (2000). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

## III.

## Analysis

**A.     Title VII**

Plaintiff alleges that her supervisors made derogatory comments about her sex. In addition, Plaintiff alleges that her supervisors retaliated against her after she complained about the alleged harassment. We discuss, and reject, each ground in turn.

Title VII prohibits employers from "fail[ing] or refus[ing] to hire or . . . discharg[ing] any individual, or otherwise . . . discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). This prohibition covers discrete acts of employment discrimination, such as termination or refusal to hire, but its reach is not limited to "'economic' or 'tangible' discrimination." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 (2002). Even in the absence of an adverse employment decision, § 2000e-2(a)(1) prohibits employers from requiring employees "to work in a discriminatorily hostile or abusive environment." Id. Title VII also makes it unlawful for employers to retaliate against employees who seek Title VII's protections. See 42 U.S.C. § 2000e-3(a).

### 1. **Hostile Work Environment**

"[W]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." Morgan, 536 U.S. at 116 (internal citations and quotation marks omitted). For a plaintiff to succeed in a hostile environment claim, she must show: (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her membership in the protected class; (4) the harassment was so "severe or pervasive that it altered the conditions of her employment and created an abusive work environment; (5) the objectionable conduct was objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so;" and (6) a basis for employer liability has been established. Torres-Negron v. Merck & Co., 488 F.3d 34, 39-40 (1st Cir. 2007) (citing O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001)).

We consider the entirety of the circumstances of employment and the alleged hostile environment, "including the frequency and severity of the discriminatory conduct, whether it was physically threatening or humiliating, and whether it unreasonably interfered with [Plaintiff's] work performance." Kosereis v. Rhode Island, 331 F.3d 207, 216 (1st Cir. 2003). A claim for hostile work environment does not "arise from 'simple teasing, offhand comments, and isolated incidents.'" Id. (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)).

Civil No. 09-1938 (JAF)                                                                                                          -8-

In Plaintiff's only specific example of the alleged discriminatory comments regarding her sex, Plaintiff claims that her supervisor told her: "Get out. For being a woman, get out."[3] (Docket No. 22-2 at 20.) Plaintiff does not claim that such comments interfered with her work, and cannot remember in what time period the comments were made, alleging only that Ortiz made the same comment several times. (Id.) The alleged comments do not constitute severe and pervasive harassment, nor do such stray remarks qualify as harassment so objectively offensive as to be considered abuse.[4]

### 2.   Retaliation

Title VII retaliation claims follow the familiar McDonnell Douglas burden-shifting framework. Mariani-Colon v. Dep't of Homeland Sec., 511 F.3d 216, 223 (1st Cir. 2007) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)). To establish a prima-facie case of retaliation under Title VII, a plaintiff must show: (1) plaintiff's protected participation or opposition, see 42 U.S.C. § 2000e-3(a); (2) a materially-adverse employment action that harmed the plaintiff inside or outside the workplace and that was harmful enough to "dissuade a reasonable worker from making or supporting a charge of discrimination"; and (3) the adverse

---

[3] Plaintiff's deposition testimony does not give full context to this comment, presumably "Get out" could have meant "Get out [of this job]. For being a woman. . . ." (Docket No. 22-2 at 20.) It could have also meant "Get out [of your truck]. . . ."

[4] Plaintiff also alleges that Ortiz suspended Plaintiff's "salary and employment for totally false and unjustified reasons." (Docket No. 23-1 at 11.) We reject such conclusory statements, as Plaintiff gave no further detail or factual support in the record that could explain when and how Ortiz took such actions. We find this allegation especially baffling, as Plaintiff has admitted her salary and benefits have not changed. (Id. at 2; Docket No. 22-2 at 5.)

Civil No. 09-1938 (JAF) -9-

action taken was causally linked to plaintiff's protected activity. Mariani-Colon, 511 F.3d at 223. We find that Plaintiff fails to satisfy the second and third prongs.

Title VII's "antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." Morales-Vallellanes v. Potter, 605 F.3d 27, 36 (1st Cir. 2010) (internal quotation marks omitted) (citing Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 64 (2006). A retaliation plaintiff must simply show "that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. The creation or intensification of a hostile work environment can constitute such an adverse employment action. Quiles-Quiles v. Henderson, 439 F.3d 1, 8 (1st Cir. 2006). However, "[m]inor disruptions in the workplace, including 'petty slights, minor annoyances, and simple lack of good manners,' fail to qualify" as adverse employment actions that could satisfy this objective inquiry. Morales-Vallellanes, 605 F.3d at 36 (quoting Burlington Northern, 548 U.S. at 68.).

This record contains no evidence of a materially-adverse action that could constitute retaliation. Plaintiff does not allege that alleged discriminatory conduct intensified after she made her complaint,[5] and even accepting Plaintiff's unsupported claims that she was overworked and "overdispatched," we find nothing in the record to indicate that this pattern

---

[5] In Plaintiff's internal complaint, she simply alleged general harassment, and did not specify whether the harassment was based on gender, age, disability or any other ground. (Docket No. 22-2 at 22.) Nonetheless, for purposes of this summary judgment motion, we will assume that the harassment she complained of to the employee hotline could have meant harassment based on gender.

Civil No. 09-1938 (JAF) -10-

intensified or began after her complaint. Plaintiff alleges, without any detail or factual support, that after her internal complaint,[6] Ortiz continued to overwork Cruz, followed her one day on her route, and continued to threaten her with discharge if she did not perform her duties. (Docket Nos. 22-2 at 13; 22-3 at 10.) As we have discussed above, however, Ortiz was transferred to a different facility <u>the day before Plaintiff made her first internal complaint</u>. (Docket No. 13-1 at 2.)

Factual impossibility aside, the First Circuit has rejected claims of an adverse employment action when a Title VII plaintiff's "general job description and salary remained the same" but was transferred and claimed she was "required to do more work, subjected to 'extreme supervision,' and forced to undergo a period of probation." <u>Marrero v. Goya of P.R., Inc.</u>, 304 F.3d 7, 23–24 (1st Cir. 2002) (finding no adverse employment action where evidence showed transfer "resulted in some minor, likely temporary, changes in [plaintiff's] working conditions"). Even accepting arguendo that another supervisor somehow engaged in the retaliatory conduct alleged,[7] such actions imply no "tangible change in duties or working

---

[6] Specifically, Plaintiff stated: "Each time it occurs, or that one calls, or that I called—when I made the 1-800 call, a few days did not even go by that there was—he was on top, with his fist, 'pushing, pushing, pushing, pushing, pushing.'" (Docket No. 22-3 at 9.) While surely something was lost in translation, such unsupported and nearly incoherent testimony—of supposed retaliation from a supervisor who was <u>transferred to a position in a different city</u> the day <u>before</u> Plaintiff made any hotline calls—cannot sustain her retaliation claim. Even more problematically, Plaintiff stated in her deposition that at the time of her call to the hotline, Ortiz had not yet made any disparaging comments based on her sex. (<u>Id.</u> at 23.) And nothing in the record or Plaintiff's deposition indicates that Santiago made such comments.

[7] Unlikely, as Plaintiff admitted that, apart from Ortiz, no one else "carried out retaliation" against her. (Docket No. 22-2 at 20.) Moreover, Plaintiff has not specified how her workload or schedule might have changed. Finally, Plaintiff has also admitted that the other drivers all complained about being overworked during Ortiz's tenure as supervisor. (Docket No. 22-2 at 17.)

conditions," and that the claimed "intensified personal animus, hostility, disrespect, and ostracism" faced by Plaintiff does not rise to the level of a material employment disadvantage that could constitute an adverse employment action. Id. at 25 (internal quotation marks and citations omitted).

**B.     ADEA**

Under the ADEA, an employer is prohibited from taking an adverse employment action against an employee who is forty years of age or older because of the latter's age. Bennett v. Saint-Gobain Corp., 507 F.3d 23, 30 (1st Cir. 2007) (citing 29 U.S.C. §§ 623(a)(1), 631(a)). Here, Plaintiff alleges that, because of her age, Defendant subjected her to a hostile work environment, as well as retaliation in response to Plaintiff's complaints of harassment. We discuss, and dismiss, each ground in turn.

**1.     Hostile Work Environment**

Hostile work environment claims originated in sex discrimination litigation, "but have since been recognized for members of any protected class." Rivera-Rodriguez v. Frito Lay Snacks Caribbean, 265 F.3d 15, 24 (1st Cir. 2001) (recognizing hostile work environment claim under ADEA). Like a Title VII claimant, an ADEA hostile work environment plaintiff "must provide sufficient evidence from which a reasonable jury could conclude that the offensive conduct is severe and pervasive enough to create an objectively hostile or abusive work environment and is subjectively perceived by the victim as abusive." Id. (internal quotations and citations omitted) (recognizing hostile work environment claim under ADEA). However,

unlike the Title VII hostile work environment framework, ADEA does not permit compensatory damages for pain and suffering. Collazo v. Nicholson, 535 F.3d 41, 45 (1st Cir. 2008). Instead, the remedy provisions of ADEA focus solely on "those pecuniary benefits connected to the job relation, including unpaid wages or overtime compensation." Id. at 44–45 (internal quotations and citations omitted).

In the present case, however, Plaintiff's hostile work environment claim fails for lack of a factual and legal basis. Plaintiff has alleged no adverse employment action that could merit pecuniary relief, such as a loss of her position, unpaid overtime, demotion, or a disadvantageous transfer. See id., 535 F.3d at 45 (rejecting ADEA hostile work environment claim as plaintiff "made no claim for pecuniary benefits related to his job or any equitable relief" and therefore no remedy was available). In fact, Plaintiff has continued to hold the same position, and does not contest that her wages were ever reduced and that she "[]ever received a demotion or reduction of benefits while working at UPS." (Docket 13-1 at 2.) Liquidated damages are available for willful violations, but these damages are also "predicated on a plaintiff's lost wages or compensation award." Collazo, 535 F.3d at 45 n.4. Additionally, Plaintiff has not alleged any loss of position or other injury that could be remedied through a non-pecuniary award.[8] Id.

---

[8] Even if Plaintiff was seeking an available form of relief, the conduct alleged was not so severe or pervasive that it could support a hostile work environment claim. While Plaintiff did take offense to the alleged comments, she has not explained how they interfered with her work. As discussed above in Part III.A.1., teasing and stray remarks alone cannot support a hostile work environment claim. See Fontanez-Nunez v. Janssen Ortho LLC, 447 F.3d 50, 57 (1st Cir. 2006) (rejecting ADEA hostile work environment claim, holding that "mere offensive utterances that did not unreasonably interfere with the employee's work performance do not amount to harassment that in essence altered the terms or conditions of [Plaintiff's] employment").

Civil No. 09-1938 (JAF)                                                                                                          -13-

at 45 (citing 29 U.S.C. § 626(b)) (explaining federal courts can grant other forms of legal or equitable relief such as reinstatement or promotion under ADEA).

**2.    Retaliation**

Like Title VII cases, ADEA retaliation claims follow the same analytical scheme and employ the McDonnel Douglas burden-shifting framework discussed in Part III.A.2. above.[9] Fennell v. First Step Designs, 83 F.3d 526, 535 (1st Cir. 1996). Where a plaintiff lacks direct evidence of retaliation, he can establish a prima-facie case by showing that "(1) he engaged in ADEA-protected conduct, (2) he was thereafter subjected to an adverse employment action, and (3) a causal connection existed between the protected conduct and adverse action." Mojica v. El Conquistador Resort & Golden Door Spa, 714 F. Supp. 2d 241, 261 (D.P.R. 2010).

As in her Title VII claim discussed above in Part III.A.2., Plaintiff again fails the second prong. She failed to identify any adverse employment actions "that a reasonable employee would have found. . . materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern, 548 U.S. at 68 (internal quotations and citations omitted).

Here, Plaintiff alleges that after she complained about Ortiz's alleged ageist comments, she faced retaliation in the form of being assigned extra work and that Santiago, her new supervisor, asked her when she planned to retire. (Docket No. 22-2 at 11–12.) Apart from one

---

[9] Where Plaintiff lacks direct evidence of retaliation, Plaintiff can establish a prima facie case by showing that "(1) he engaged in ADEA-protected conduct, (2) he was thereafter subjected to an adverse employment action, and (3) a causal connection existed between the protected conduct and adverse action." Mojica v. El Conquistador Resort & Golden Door Spa, 714 F. Supp. 2d 241, 261 (D.P.R. 2010).

Civil No. 09-1938 (JAF)                                                                                                    -14-

unsupported statement in the Complaint that Defendant's agents gave Plaintiff "the worst working shifts," nothing in the record suggests Plaintiff faced an increase in hours or disadvantageous change in schedule, and she never provided detail about such a change.[10] (Docket No. 1 at 5.) Plaintiff's retaliation claim fails; she has failed to provide evidence of any material retaliatory acts "producing a significant, not trivial, harm."[11] <u>Carmona-Rivera v. Commonwealth of Puerto Rico</u>, 464 F.3d 14, 19 (1st Cir. 2006).

**C.     ADA**

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, . . . advancement, or discharge of employees, . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). In her complaint, Plaintiff alleges that Defendant rejected her requests for reasonable accommodation, increased her workload after her request, and make discriminatory and threatening comments because she received treatment for her condition at the SIF.[12]

---

[10] Apart from one unsupported statement in the Complaint that Defendant gave Plaintiff "the worst working shifts," nothing in the record suggests Plaintiff faced an increase in hours or disadvantageous change in schedule, and she never provided detail about such a change. (Docket No. 1 at 5.) Indeed, the record suggests otherwise, as Plaintiff admits that her terms and conditions of employment remained unchanged since they were governed by a collective bargaining agreement with UPS. (Docket No. 23-1 at 2.)

[11] Finally, even if Plaintiff had identified materially-adverse retaliatory conduct, she has shown no causal connection between the alleged retaliation and her protected conduct. As discussed above in Part I, Ortiz transferred before she even made her internal complaint about his harassment, and nothing in the record indicates that Santiago knew of her complaint. In fact, based on the meager record in front of this court, it appears that Plaintiff herself admits that her complaint made no change in Ortiz's alleged conduct, stating that "all those comments are continuously with him—accommodation or no accommodation, or harassment." (Docket No. 22-2 at 11.)

[12] Defendant argues that Plaintiff failed to properly exhaust her administrative remedies because her EEOC complaint only discussed her mental disability, instead of a physical disability. This intriguing

Civil No. 09-1938 (JAF)                                                                                              -15-

"An individual is disabled if he (1) has a physical or mental impairment which substantially limits one or more major life activities, (2) has a record of such impairment, or (3) is regarded as having such an impairment." Quiles-Quiles, 439 F.3d at 5. Plaintiff claims her carpal tunnel syndrome, unspecified knee and back problems,[13] along with depression, render her disabled under the first category.

### 1.   Hostile Work Environment

The First Circuit has never explicitly held that the ADA provides a cause of action for claims of hostile work environment. See Quiles-Quiles, 439 F.3d at 5 n.1 ("Although we have not had occasion to evaluate disability harassment as a viable theory of recovery, we have assumed that it is viable."). Assuming that such a cause of action does exist, it is analogous to a Title VII hostile work environment claim. See 42 U.S.C. § 12117(a) ("[T]he powers, remedies, and procedures set forth in [Title VII] shall be the powers, remedies, and procedures [the ADA] provides"); see also Tobin v. Liberty Mut. Ins. Co., 553 F.3d 121, 130 n.7 (1st Cir. 2009) (discussing the applicability of Title VII procedures to ADA cases). Therefore, one of the elements of the prima-facie case for such a claim would be that Plaintiff was harassed

---

shortcoming, however, would not affect this court's subject matter jurisdiction. See, e.g., Frederique-Alexandre v. Dep't of Natural & Envtl. Res. P.R., 478 F.3d 433, 440 (1st Cir. 2007) (citing Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982)). Because we dismiss Plaintiff's complaint on other grounds, we decline to address these arguments.

[13] Plaintiff has only given vague testimony that she suffers knee and back pain. She has not elaborated on how this pain impacts her daily life activities, and failed to provide any additional evidence or medical documentation of these conditions. Because we dismiss Plaintiff's claims on other grounds, we need not reach the issue of whether her knee and back pain can qualify as disabilities. Cf. Squibb v. Memorial Med. Cent., 497 F.3d 775, 784 (7th Cir. 2007) (affirming summary judgment against plaintiff who made only general assertions "unsupported by any additional evidence, medical or otherwise" of her alleged disability).

because of her disability. See Quiles-Quiles, 439 F.3d at 5 (noting, without criticism, a lower court's requirement that "hostility was directed at [Plaintiff] because of his disability" as part of prima-facie case of ADA hostile work environment); cf. Torres-Negrón, 488 F.3d at 39–40 (requiring that "harassment was based on [plaintiff's] membership of the protected class" for a prima-facie case of hostile work environment under Title VII). Plaintiff has not produced any evidence—beyond conclusory statements in the complaint—that she suffered a hostile work environment because of her disability. Consequently, Plaintiff's claim for hostile work environment based on a disability fails.

**2. Reasonable Accommodation**

Apart from claiming an adverse employment decision, a plaintiff also has a cause of action under the ADA if an employer has failed to make a reasonable accommodation for a disabled individual. See 42 U.S.C. § 12112(b)(5)(A). To succeed in a reasonable accommodation claim, a plaintiff must demonstrate "(1) he was disabled within the meaning of the ADA, (2) he was able to perform the essential functions of the job with or without a reasonable accommodation, and (3) [the employer], despite knowing of his disability, did not reasonably accommodate it." Tobin v. Liberty Mut. Ins. Co., 433 F.3d 100, 107 (1st Cir. 2005). To survive summary judgment, Plaintiff "must furnish significantly probative evidence that . . . the employer's failure to [accommodate] affected the terms, conditions, or privileges of the plaintiff's employment." Gomez-Gonzalez v. Rural Opportunities, Inc., 626 F.3d 654, 664 (1st Cir. 2010) (quoting Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 264 (1st Cir.

Civil No. 09-1938 (JAF) -17-

1999)). Plaintiff bears the burden of proof, and must establish the elements of her failure-to-accommodate claim by offering a facially-reasonable accommodation that would permit her to effectively perform her job. Kvorjak v. Maine, 259 F.3d 48, 55 (1st Cir. 2001).

Plaintiff alleges that she made verbal requests to Ortiz for accommodation, telling him she no longer wanted to load trucks. (Docket No. 22-1 at 16–18.) But, Plaintiff herself acknowledges that during these verbal requests, she did not tell Ortiz that she did not want to load trucks for medical reasons.[14] (Id.) "An employer need not provide accommodations where it does not know an employee has a disability." Estades-Negroni v. Assocs. Corp. of N. Am., 377 F.3d 58, 64 (1st Cir. 2004).

By the time Plaintiff had submitted documentation of her carpal tunnel syndrome, she was no longer performing loading duties, and had not performed any loading duties since December 2008. (Docket No. 22-1 at 12.) Additionally, the doctor's letter submitted to Defendant, dated June 3, 2009, stated that Plaintiff had carpal tunnel, but that Plaintiff <u>could perform all duties pertaining to her position</u>. (Docket No. 13-1 at 6.)

Plaintiff has not met her burden, and has not suggested a reasonable accommodation that she asked for or could have asked for—in fact, she has never detailed the exact nature of her

---

[14] In her EEOC charge, Plaintiff references merely an emotional disability, which was referenced only briefly in passing in the Complaint and does not play a role in the disabilities discussed during Plaintiff's deposition. (Docket No. 13-1 at 6.) Later, in Plaintiff's Response to Defendant's Motion for Summary Judgment, Plaintiff claims that she has suffered from depression since July of 2008, allegedly because of her supervisor's comments and discrimination. (Docket No. 23 at 13.)

request, beyond her desire to be excused from loading duty.[15] Moreover, we find that some time before Plaintiff presented medical documentation of a disability, she had already received the accommodation of not loading trucks; Plaintiff herself has stated that she has not performed the duties of a truck loader since December 2008.[16]

### 3. **Retaliation**

A cause of action for unlawful retaliation exists under the ADA. See 42 U.S.C. § 12203(a). A prima-facie claim of retaliation under the ADA mirrors the prima-facie case of retaliation under Title VII. See Freadman v. Metro. Prop. & Cas. Ins. Co., 484 F.3d 91, 106 (1st Cir. 2007) ("[A] plaintiff must show that (1) she engaged in protected conduct, (2) she suffered any adverse employment action, and (3) there was a causal connection between the protected conduct and the adverse employment action."). A plaintiff need not succeed on her disability

---

[15] Moving, carrying, and lifting packages up to 70 pounds—assisting in moving packages up to 150 pounds—are all listed as in the "Essential Job Functions" section in UPS literature describing the driver position and its duties. (Docket No. 13-5.) Plaintiff has already been excused from loading her truck before leaving on her delivery route, but she could not request a reasonable accommodation in which she never had to move or carry packages at all, as such an accommodation would redefine her position altogether. See Calef v. Gillette Co., 322 F.3d 75, 86 n.8 (1st Cir. 2003) ("An employer has no duty to modify an essential function of a job. If the plaintiff, with or without reasonable accommodation, cannot perform an essential function of the job, then he is not a qualified individual and there is no duty to accommodate.").

[16] Plaintiff however, alleges, in a sworn statement dated July 10, 2010, that she does, in fact, have to perform loading duties by organizing and loading the truck. (Docket No. 23-2 at 1.) We reject Plaintiff's conclusory and self-serving statements. "When an interested witness has given clear answers to unambiguous questions [in a prior deposition], he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed." Colantuoni v. Alfred Calcagni & Sons, 44 F.3d 1, 5 (1st Cir. 1994). Plaintiff asked for, and was granted, the accommodation of being excused from loading duties. In Plaintiff's deposition, she clearly described these duties as loading a truck before driving her route, not as organizing her packages as she drove her route.

Civil No. 09-1938 (JAF)                                                                                                      -19-

discrimination claim to prevail on a retaliation claim. <u>Carreras v. Sajo</u>, 596 F.3d 25, 36 (1st Cir. 2010).

We find no evidence in the record that would permit a factfinder to conclude that Defendant retaliated against Plaintiff. Plaintiff was granted her request not to load trucks, and Defendant responded to Plaintiff's claimed disability by requesting more information, only to receive a letter stating that she could perform all her duties. Plaintiff has offered no evidence that she suffered an adverse employment action after making her requests or receiving treatment at the SIF. Plaintiff has produced no evidence of a causal or temporal connection between her request for accommodation and any alleged retaliatory conduct.[17] Plaintiff's vague claims of being overdispatched and overworked, without even the roughest estimate as to when the retaliation occurred, cannot survive summary judgment. We find no genuine issue of material fact as to retaliation.

**D.    Commonwealth Law Claims**

The jurisdictional basis to maintain plaintiffs' Puerto Rico law claims has been undermined by the dismissal of their federal claims. Accordingly, those supplemental Commonwealth claims are dismissed.

---

[17] While temporal proximity between a protected act and adverse employment action can establish a prima-facie case of retaliation, it is neither definitive nor necessary for a successful retaliation claim. <u>Carreras v. Sajo</u>, 596 F.3d 25, 38 (1st Cir. 2010); <u>Vera v. McHugh</u>, 622 F.3d 17 (1st Cir. 2010).

## IV.

## Conclusion

For the foregoing reasons, we hereby **GRANT** Defendant's motion for summary judgment (Docket No. 13), and **DISMISS** Plaintiff's complaint (Docket No. 1) in its entirety.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 4th day of March, 2011.

>                                     s/José Antonio Fusté
>                                     JOSE ANTONIO FUSTE
>                                     Chief U.S. District Judge